FINLEY v. PEW (No. 1011)
FINLEY v. PEW (No. 1013)
(Decided March 14, 1922; 205 Pac. 310)
(Rehearing Denied May 5, 1922)

APPEAL AND ERROR—PLEA IN ABATEMENT—CONTRACTS—FINDINGS—
JUDGMENT—EXCEPTIONS — DEPOSITIONS—IMMATERIAL ERROR—AT-
TACHMENT—DISSOLUTION OF ATTACHMENT—AMENDMENT—COUN-
TERCLAIM—PAYMENT—EVIDENCE—ACTION FOR WORK AND LABOR—
ESTOPPEL.

1. The direct appeal statute (C. S. 6415) expressly provides
that it is independent of and neither modifies, amends,
alters nor repeals the laws of the state relating to pro-
ceedings in error.

2. As no method of assigning cross errors is provided by the
direct appeal statute, one party to a cause may appeal
and the other prosecute proceedings in error if desirable.

3. A construction contract providing for the performance of
work, payment therefor, and the furnishing of legal
evidence of such payment, construed to have reference
to payments to be made during the progress of the work
and not to the final payment after completion of the
work.

4. Where exceptions are taken to the findings of fact and
conclusions of law rendered by the trial court, an excep-
tion to the final judgment is unnecessary for purposes
of review.

5. The admission of depositions over defendant's objection
on the ground of insufficiency of notice of the taking
thereof was without prejudice where defendant's testi-
mony admitted the facts sought to be proven by the
depositions.

6. A finding and order of the trial court denying a motion to
dissolve an attachment made on conflicting evidence will
not be disturbed if there be evidence to support it.

7. While a writ of attachment cannot issue except after the
commencement of the action, it is not absolutely essen-
tial to a valid commencement of an action that the peti-
tion be not demurrable. Hence though a petition is sub-
ject to a demurrer that fact does not necessarily render
the attachment void.

8. Where a petition defective in statement is amended in ac-
cordance with the rules governing the amendment of

pleadings, such amendment will be considered on a hearing to dissolve an attachment issued in the cause, as having been made for the purpose of preserving the attachment.

9. A pleading may be amended in accordance with C. S. 5707 if the amendment does not change substantially the claim or defense and, recognized tests as to whether it does, or does not, are 1st, whether the same evidence will support both pleadings; 2nd, whether the same measure of damages is applicable in both cases; and 3rd, whether a recovery on the amended pleading will operate to bar a recovery upon the original.

10. Where the only material changes in an amended petition are the separation of amounts claimed to be due under a contract from the remainder of the money alleged to be due, and an attempt to set out an express agreement relating to extra labor, material and money furnished, instead of an implied agreement stated or attempted to be stated in the original petition, the amendments are permissible under the statute.

11. The recovery of a less amount than claimed in the petition and in an affidavit for attachment, is not of itself a sufficient ground for dissolving an attachment nor to show error in refusing to dissolve it, the amount of recovery having been determined on the merits at the trial, and there being no showing of bad faith on the part of the plaintiff in making the affidavit for attachment.

12. Plaintiff suing on a written contract also alleged the existence of an oral agreement with defendant for the performance of other work and the furnishing of other material and money contingent upon defendant's requirements in connection with the construction of the building, incorporated separate items of claim arising pursuant to such oral agreement, *held*, that such separate items were sufficient to constitute an action on account for labor, money and material furnished limited only by the allegation that said extra items accrued in and about the construction provided for by the express contract.

13. In an action by plaintiff on a building contract defendant counterclaimed for alleged breaches on the part of plaintiff in failing to burn certain brick in accordance with the original contract, and plaintiff in reply alleged that the bricks in question were purchased by defendant under a collateral agreement between them made subsequent to the original contract, *held*, not to be a departure from the petition.

14. In the absence of a motion to make more specific, a general plea of payment will admit evidence of payment in money or property.

15. In an action upon a building contract, a finding of substantial performance is sufficiently supported by an allegation of full performance.

16. In an action upon a building contract, a finding of substantial performance by plaintiff, *held*, sustained by the evidence.

17. In an action upon a building contract, defendant by relying on and setting forth specific breaches of the contract and upon no other, is estopped from claiming and relying upon any other.

18. A building contract provided for the burning by plaintiff of a quantity of common brick, plaintiff to furnish the labor and defendant the brick plant, but was silent as to which of the parties should pay the cost of repairs and fuel in the brick burning operations. In an action by plaintiff on the contract to which defendant set up a cross demand by counterclaim, *held*, that plaintiff should recover the reasonable cost of repairs and fuel in connection with the burning of the brick and that the judgment of the trial court should be modified accordingly.

APPEAL from and Error to the District Court, Fremont County; HON. RALPH KIMBALL, Judge.

Action by C. H. Finley against George H. Pew to recover a payment alleged to be due on account for labor and material furnished and money advanced in connection with a building contract. There was a judgment for plaintiff. Defendant appeals and plaintiff brings error. The material facts are stated in the opinion.

*George F. Dobler* and *E. H. Fourt,* for plaintiff in error and respondent.

This action involves a written contract made between the parties for the construction of a building; the trial court erred in applying the facts to the terms of the written contract, which is in evidence. Various items of credit were improperly denied, all of which are specified in the general statement set forth in our brief and which would have increased the judgment; in the construction of contracts if it

appear that one party is prevented from carrying out or performing his part of the contract by the other party, he shall not be liable for the loss incurred. (McLane v. Delayer, 56 N. Y. 619; Grey v. Wells, 50 Pac. 23 (Cal.); McConnell v. Water Co., 85 Pac. 229 (Calif.); Gubbins v. Lautenschlager, 74 Fed. 160.) Defendant directed the work and knew that cement was not being used. Refusal of the owner to accept the work for imperfections, the work having been directed by defendant is no defense against a suit for the labor cost. There having been substantial performance recovery should be allowed even without proof of complete fulfillment. (St. Chas. v. Stookey, 154 Fed. 772.) The law will imply a promise to pay what the services are worth. (Sadue v. Semour & Wood, 24 Wendell, 60; Omaha Co. v. City, 156 Fed. 922; City v. Fitzgerald, 114 Fed. 547; Connell v. Hagins, 150 Pac. 769.) A party is not permitted to impeach his own witness or evidence. (Cox v. Eayers, 55 Vt. 24; Arnold v. State (Wyo.) 40 Pac. 967.) No foundation was made for impeachment of Finley's account books. (98 Ency. Evid. 98; Dear v. Tracey, 1 Wyo. 389; 17 Cyc. 464, 129 Fed. 257.) The introduction of a witness or books of account is an admission of credibility. (7 Ency. Evid. 25. Bosler v. Coble, 84 Pac. 895; Blanchard v. Bank, 75 Fed. 249; Mattock v. Lyman, 18 Vt. 98.)

*George F. Dobler* and *E. H. Fourt,* for respondent in the appeal by George H. Pew.

The specifications of error filed by appellant, numbered 1 to 57 inclusive, are without merit for the specific reasons urged against each of them in our written brief; the court will observe that there is no reply to plaintiff's plea of payment which is therefore denied. (Hubler v. Pullen, 9 Ind. 275; 68 Am. Dec. 620; Farmers Bank v. Sherman, 53 N. Y. 69.) Evidence of payment for the goods or other articles of value is admissible under an allegation of payment. (Crandall v. Bradley, 11 N. Y. 144; Roberts v. Baddy, 2 Penrose, 63 (Penn.); Cole v. Ross, 9 Monroe, 395.) Payment in legal contemplation is the discharge of an obligation

by the delivery of money or its equivalent. (6 Words and Phrases, 5247; Cranston v. Company, 128 Pac. 427.) A defense even though imperfectly stated by answer is sufficient to sustain a judgment if not objected to. (Epinger v. Kendrick, 46 Pac. 613; Chaplin v. Carruthers, (Wyo.) 129 Pac. 434.) A ruling of the trial court denying a motion to dissolve an attachment if based on evidence will not be disturbed. (Bank v. Swan, 3 Wyo. 356.) An objection to a pleading for uncertainty may be waived by failure to move for a more specific statement. (Williams v. U. P. R. R. Co., 124 Pac. 505.) Failure to move for a more specific statement of cause of action constitutes a waiver. (C. S. 4383. Cone v. Ivinson, 33 Pac. 31; 4 Wyo. 203; U. S. F. & G. Co. v. Parker, 121 Pac. 521; Irrigation Co. v. Ditch Co., 31 Pac. 43; Becker v. Hopper, 138 Pac. 179; Metcalf Co. v. Gilbert, 116 Pac. 1017; Phelan v. Brick Co., 188 Pac. 354.) In the absence of exception an objection is lost. (8 Ency. P. & P. 157. Boburg v. Brahl, 3 Wyo. 325; Lambkin v. Sterling, 1 Idaho 120; Newport Co. v. Pace, 158 U. S. 56; Atchison v. Arnold, 72 Pac. 190; 11 Wyo. 357; Synd. Co. v. Bradley, 6 Wyo. 171; State v. District Court, 13 Wyo. 1; Freeburg v. Lamoreaux, 85 Pac. 1054.) No exception was taken to the order giving defendant a money judgment; the exception referred to in specification 38 refers only to the order sustaining the attachment, and nothing more.

*A. H. Maxwell* and *H. J. Christy,* for appellant.

After carefully reading and considering respondent's brief and examining such of the authorities therein cited as we have access to, we feel that it is possible that he has failed to grasp the import of the errors assigned in our specifications of error and the points we endeavor to make in our brief. We therefore request permission to recapitulate certain matters which perhaps are obscurely stated; the summarization of our specifications of error as set forth in respondent's brief purporting to give their substance, is apparently incorrect and we therefore take the liberty

of reviewing said specifications in general, many of them however, relating to the admission or rejection of evidence at the trial; specification numbered 52 relates to the deposition of Henry Tietjen admitted over the objection of defendant on the ground of a defective notice of the taking thereof. The court erred in overruling defendant's objection to the admission of this deposition, to which exception was duly noted. The appeal is from the judgment and an appealable order; the case is before the Supreme Court upon the entire record. Neither the contract nor pretended account annexed to the petition was a part of the pleading. (Insurance Company v. Kahn, 4 Wyo. 364.) The defect was not cured by amendment since a different contract was attached to the original petition. Plaintiff's reply was insufficient to support the evidence offered under it. (City of Rawlins v. Jungquist, 16 Wyo. 432.) The findings of fact do not sustain the attachment proceedings. The affidavit in attachment was insufficient in not stating that the claim was just. (8848 C. S.)

*A. H. Maxwell* and *H. J. Christy*, for defendant in error.

Upon the ground that the proceedings in error are regarded under the code as a new suit (2 Cyc. 510) commenced after the initiation of a direct appeal by defendant, appellant has filed a plea in abatement; even if the appeal be regarded as a new suit, it is prior in time to the proceedings in error brought by the plaintiff in error. If final judgment in the appeal would support a plea of *res judicata* in the subsequent suit, the suits are identical and the second suit should be abated. 1 C. J. 66; 1 Cyc. 28, and the matters and things adjudicated in the first suit cannot be re-examined in the second. (23 Cyc. 1215.) The record shows the questions in issue in both suits to be identical and the petition in error should therefore be abated. The errors set forth in the petition in error may be summarzed in two general groups, 1, alleged errors in disallowing items claimed by plaintiff; 2, alleged errors in the allowance of credits claimed by plaintiff. A party alleging a contract

carries the burden of proving it where it is denied. (9 Cyc. 757.) The same burden follows one alleging performance. If our plea in abatement be overruled and the court desires to consider a cause on its merits we contend that no prejudicial error was committed by the trial court regarding the matters presented by plaintiff's motion for new trial. A strange theory advanced in the brief of plaintiff in error is that the cross examination by defendant with reference to books of account proved plaintiff's case. But we believe the rule to be well settled that a witness upon cross examination still belongs to the party who originally called him. (Greenleaf, 14th Ed. Vol. 1, pg. 540.) Whatever was shown by the books was plaintiff's testimony and not defendant's. (Jones Ev. Vol. 5, pg. 114.) Plaintiff tries to recover upon proof of his case by a preponderance of the evidence as to the existence of the contract; his performance thereof and the value thereof where the matter was in addition to the cost of labor and material included in the lump sum of $18,200.00. We submit that the above propositions were not established by the exhibits referred to; plaintiff failed to prove what he attempted to plead and failed to plead what he attempted to prove. Exceptions taken to a ruling at the trial are presented by specifications of error in defendant's direct appeal and discussed in the brief. We believe these assignments should be considered with the same effect as if assigned as cross errors, and ask that each of said errors be considered separately in connection with the portions of the evidence indicated by this brief. The case being one governed so largely by the facts given at the trial and the record being so voluminous, it is difficult indeed to discuss the record in greater detail. Upon the whole, we believe it is self evident from the record that plaintiff failed to make even a *prima facie* case. If the court should be of the opinion that there are no vital defects in plaintiff's pleading, and that the errors existing could not be cured, a new trial might be proper. But we believe that upon an appeal from a judgment in favor of appellant below, where the appellate court decides the ap-

pellant has no cause of action and cannot succeed in another trial, it will not order a new trial but either render a proper judgment or order it rendered in the trial court. (3 Cyc. 452.)

*E. H. Fourt* and *George F. Dobler,* on motion to strike plea in abatement.

· The plea in abatement is not well taken. The direct appeal statute does not change, modify, amend, alter or repeal the law providing for proceedings in error. (Laws 1917, c. 32, Sec. 15.) Authorities cited by defendant in error do not apply. For example, the Oregon case of Foster v. Borne, 58 N. E. 66, applies to a case triable *de novo.* The Oregon case was not an appellate proceeding. The principle of consolidation suggested does not apply in appellate courts. In view of the provisions of the statute that a direct appeal does not abridge the remedy of proceedings in error we do not consider it necessary to take up the time of the court further.

Blume, Justice.

The parties will be herein referred to in the same order as in the court below. Finley, the plaintiff, brought an action against the defendant Pew to recover a balance of $6478.93, claimed to be due on account for certain labor and material furnished and money paid or advanced in connection with the erection of the Vocational High School building at Lander. Pew was the original contractor. There was a written contract between the parties, reading as follows:

"Lander, Wyoming, August 9th, 1918.

"ARTICLES OF AGREEMENT"

"Between C. H. Finley, party of the first part, and Geo. H. Pew, party of the second part.

"The party of the first part agrees to do the following work on the Lander Vocational High School in a good workmanlike manner, for the consideration hereinafter

mentioned. Party of the first part to make and burn all common brick necessary for said building. Party of the first part to furnish labor only, party of the second part to furnish brick plant.

"Party of the first part to lay all brick, common and face, and furnish all labor, lime, sand, and color for mortar. And to clean down all outside brick work, finish all lintels and sills and leave the building neat and clean from top to bottom, and furnish Medusa cement for finish. Do all plastering and furnish all labor and material, including all metal corner beads and put on all cement bases. To furnish mold and run plaster cornice in vestibule and stairway. Plaster and panel four columns in hall. All work to be according to plans and specifications for the lump sum of Eighteen Thousand two hundred dollars ($18,200.00). To be paid as follows:—Party of the first part to do one thousand dollars ($1000.00) worth of work, pay for same and to furnish legal evidence that he has paid for same.

"The party of the second part to pay nine hundred dollars ($900.00). This part to extend all the way through the contract. Party of the first part to do all excavating for the sum of eighty cents (.80) per cubic yard.

"Party of the second part guarantees the following prices F. O. B. building site: Stucco at $18.00 per ton, Metal Corner Beads at 13c per foot, Lath at $7.50 per M.

(Signed)   C. H. Finley.<br>(Signed)   Geo. H. Pew."

The court below gave judgment to the plaintiff for the sum of $2100.29. Defendant brings this case here by direct appeal. Plaintiff, after the defendant appealed, instituted the second case here (No. 1013), by petition in error, also complaining of the judgment. Counsel for defendant thereupon filed herein their plea in abatement, claiming that plaintiff should have filed cross-errors in the direct appeal case, and that the case cannot be brought here by plaintiff by petition in error after defendant has instituted his proceedings of direct appeal. Subject to our ruling on that

plea, it has been agreed that the two cases should be considered together.

1. The plea in abatement must be overruled. Section 6415 of the Wyoming Comp. Statutes 1920 provides that the provisions relating to direct appeal are:

"a separate and independent method of reviewing civil and criminal causes in the Supreme Court, in addition to the provisions of law of this state now in existence—and nothing herein contained shall be construed as modifying, changing, amending, altering or repealing any of the provisions of the existing laws of this state relating to proceedings in error."

We think that the statute preserves to a party the right to bring an action here by petition in error, although the other party to the case comes up here by direct appeal. No method of assigning cross-errors is provided by the direct appeal statute. Hence where one party has sought review of the case by direct appeal, then the other party, if compelled, as contended by counsel for defendant, to seek review of errors complained of by him in the same proceeding, must serve notice of appeal and file specifications of error the same as his opponent. But grave injustice might in such case often result, since one party, by serving his notice of appeal at the last moment, might prevent his unprepared opponent who intended to come here by petition in error, from serving any such notice within the time provided by law, and thus deprive him of the right of having the errors of which he complains reviewed. The question is not new, and has been considered in Harding v. Larkin, 41 Ill. 413; Page v. People, 99 Ill. 418. A full discussion of the subject will be found in Armijo v. Neher, 11 N. M. 354, 68 Pac. 914. In all these cases the holding of the court is contrary to the contention of counsel for defendant.

2. The contract, as will be noted, provides that "Party of the first part to do one thousand dollars worth of work, pay for same and furnish legal evidence that he has paid for same. The party of the second part to pay $900. This part to extend all the way through the contract." Counsel

for defendant, accordingly, contend that the requirement that legal evidence be furnished constitutes a condition precedent, compliance with which should have been pleaded, and since that has not been done, that the petition fails to state a cause of action. We think it clear, however, that the provision quoted has reference only to payments to be made during the progress of the work, and not at all to the final payment, after the completion of the work. (See Oberlies v. Bullinger, 75 Hun. 248, 27 N. Y. S. 19, 9 C. J. 758-759, and cases cited.)

3. The defendant took exceptions to certain of the findings of the court and the conclusions of law, and did not except to the judgment rendered thereon and counsel for plaintiff contend that for that reason the defendant has no standing in this court. That question, has, however, been settled contrary to the contention of plaintiff in the case of Nichols v. Board, 13 Wyo. 1; 76 Pac 681; 3 Ann. Cas. 543, holding that an exception to a final judgment is not necessary, the exceptions to the rulings on the trial and the findings complained of being sufficient.

4. Defendant complains of the admission of the deposition of the witness Henry Tietjen, on the ground that no sufficient notice of the taking of the deposition had been given him. No exception to this effect had been filed before the trial, but counsel for defendant contend that since they appeared specially at the time of taking the deposition, and the exception was then made and appears on the face of the deposition, it was not necessary to file separate exceptions. We need not go into that question. The witness merely testified that the defendant had admitted to him that he would pay half of the rebuilding of some piers. The defendant himself admitted that he agreed to pay half of the cost, which would be from $30.00 to $50.00. There is testimony in the record that the cost was greater, but the court only allowed the plaintiff $25.00, an amount within the testimony of the defendant

himself. If, therefore, there was error in admitting the deposition, it was without prejudice.

5. At the time of the commencement of the action, a writ of attachment was issued in the case, and certain money garnished in the hands of garnishees. The defendant before pleading to the petition filed in the case, appeared and filed a motion to dissolve the attachment. Counsel for defendant contend that there are several reasons why the motion to dissolve the attachment should have been sustained. One reason given is that the plaintiff had the burden of proving the ground for attachment, but that he has failed to do so. The lower court, however, passed on the weight of the evidence submitted on this issue; there is ample testimony to sustain its finding thereon, and we are unable to say that its conclusion thereon is wrong. Again, counsel argue that the motion should have been sustained for the reason that the writ cannot issue except at or after the commencement of the action; that an action cannot be said to have been commenced until a petition is filed stating a cause of action; that in this case the petition failed to state a cause of action and hence there was nothing to support the attachment. While that part of the petition wherein plaintiff sought recovery upon a *quantum meruit* was not sufficient to authorize a recovery, we do not believe that the petition as a whole, wherein recovery was also sought upon the contract, was demurrable. Even if, however, it was insufficient to withstand a demurrer, the conclusion drawn by counsel does not follow. Our statute evidently does not contemplate that it is absolutely essential for a valid commencement of an action that the petition must not be demurrable, for section 5709 of the Wyo. Comp. Stat. 1920 provides that if a demurrer is sustained the adverse party may amend, if the defect can be remedied by amendment, without providing that in such case another summons must issue. Hence, though a petition is subject to a demurrer, that fact does not necessarily render the attachment void. (6

C. J. 104; Baker v. Hahn, (Tex. Civ. App.) 161 S. W. 443.) If the complaint fails to state a cause of action because the facts are defectively stated, but it appears that a cause of action can be stated and that the complaint is capable of amendment in accordance with the rules governing amendments, then on the hearing of the motion to dissolve, the amendment will be considered as having been made for the purpose of preserving the attachment. (Ross v. Mining Co., 14 Idaho 687, 95 Pac. 821; Kohler v. Agassiz, 99 Cal. 9, 33 Pac. 741; Hathaway v. Davis, 33 Cal. 161; Hammond v. Starr, 79 Cal. 556, 21 Pac. 971; Hale Bros. v. Milliken, 142 Cal. 134, 75 Pac. 653. Hoffman v. Const. Co., (Cal. App.) 173 Pac. 776; American Surety Co. v. Kartowitz (Mont.). 54 Mont. 92, 166 Pac. 685; Baker v. Hahn, supra.) The contention made that there is a variance between the petition and the affidavit of attachment, because the petition fails to state a cause of action, is but another way of stating the foregoing point.

6. Counsel further claim that the petition was not capable of amendment. According to Section 5707 of our statute an amendment may be made if the latter does not change substantially the claim or defense, and the tests sometimes applied as to whether it does or not are, first, whether the same evidence will support both pleadings; second, whether the same measure of damages is applicable in both cases; and, third, whether a recovery on the amended pleading will operate to bar a recovery upon the other. (Kirchner v. Smith, 28 O. C. C. Rep. 45; see 31 Cyc. 417, 418.) We think that all these tests are fully satisfied in the case at bar. The original petition alleges that on August 19, 1918, plaintiff entered into a written contract, copy of which is attached,

"By the terms of which contract, plaintiff was to perform certain things therein enumerated on the construction of the Vocational High School building in Lander, Wyoming, at an agreed price stated in said contact. * * * The plaintiff has performed his part * * * and in addition

has performed certain extra labor * * * and has furnished certain materials and advanced certain money for the benefit of the defendant in connection with the construction of the said building.''

And then plaintiff alleges that the whole sum, including extra labor, material, and money furnished amounts to $25,376.93; that defendant is entitled to a credit of $17,870.00; that the balance is unpaid and judgment is demanded therefor. An itemized statement is attached. In the amended petition the plaintiff fully sets out and claims upon the above original contract, claims the same amount, gives the same credits and asks judgment for the same amount, as in the original petition. The itemized statement for extra labor, material and money furnished is embodied in, and claimed upon, in the amended petition, and plaintiff in part further alleges that after he entered upon the performance of his work, defendant was gone a good deal, which hindered and delayed the work of plaintiff, and

''That thereupon the plaintiff and defendant mutually agreed to extend and enlarge the duties of the plaintiff under the said agreement, and it was agreed that the plaintiff should perform other work, furnish material and expend money and do certain things in and about the construction of said building as might be required by the defendant. * * * That the defendant from time to time, consulted with the plaintiff and directed other work as he should perform under the said modified agreement, and that the plaintiff from time to time, consulted the defendant about the work and advised him as to the extra work done, material furnished and the costs and value thereof, and as to the amounts of money expended by him for the benefit of the defendant, all of which was reasonable, satisfactory to the defendant and was approved by him, and the prices charged therefor were reasonable and just.''

Plaintiff further alleges that defendant agreed to pay for such work and expenditures and that said extra work

was done, and said material and money was furnished pursuant to said agreement. The only material changes in the amended petition are (1) that the amounts due under the original contract are set out separately from the remainder of the money due, and (2) plaintiff attempts to set out an express contract or agreement for and in connection with the extra labor, material and money furnished, instead of an implied contract stated or attempted to be stated in the original petition. Such changes are clearly within the purview of our statute allowing amendments. (31 Cyc. 407.)

7. Counsel for defendant claim that the court should have dissolved the attachment, because it appears that defendant was not given credit for certain items, and that, therefore, the affidavit of attachment is shown to be false. The mere fact, however, that the plaintiff recovers a less amount than claimed is not of itself sufficient to show that the attachment should have been dissolved, or that the court erred in refusing to dissolve it. (6 C. J. 429.) The facts upon which a less amount than plaintiff claimed were awarded to him by the judgment were shown upon the trial of the case and not upon the hearing of the motion to dissolve. In E. B. Williams & Co. v. Lumber Co., 105 La. 99, 29 So. 491, the court said:

"Defendant urges that the amount of the judgment of the district court was so much less than the amount of plaintiff's claim that, if this court affirms the judgment, the attachment should be dissolved, as it would be evident that plaintiff was greatly mistaken in its affidavit. If one, in good faith, sue for the violation of a contract, and claims a larger amount than is afterwards decreed by the court to be due, the accompanying attachment should be held good for the amount so decreed as due. The mere fact that plaintiff claimed too much, if claimed in good faith, is not to be taken as ground sufficient to dissolve the attachment and perhaps prevent him from recovering the claim due."

The test, therefore, that courts seem to have applied in a case of this kind is good or bad faith in making the claim. In the case at bar, it is true, it appears that plaintiff failed to give certain credits. The transactions between the parties, however, were somewhat involved. Even in this court the plaintiff is contending for a judgment as large as the claim originally made by him. The plaintiff was not, nor pretended to be, an expert bookkeeper, and he had hired no person to keep the books for him. There is evidence that before starting the action, he asked the defendant to go over the checks and books with him, but this was not done. We cannot, on the whole, say that the plaintiff acted in bad faith, and we cannot, therefore, disturb the finding of the court on this issue.

8. It will be further noticed that plaintiff, in his amended petition, alleges that in addition to the duties under the original contract, he, by oral agreement with defendant, was to perform other work and furnish material and money as might be required by the defendant. An itemized statement showing just what was done and when, and the amount, is set out in detail. Counsel for defendant claim that no sufficient facts are pleaded in connection with the oral contract to constitute a cause of action. At the time that the oral agreement was made, it was, of course, uncertain just what might be required. It would have been practically impossible, as we conceive, for plaintiff to have set out the agreement in greater detail, since by reason of the very nature of an agreement of that kind, details could probably not have been given. Nor do counsel for defendant, though claiming that more facts should have been alleged, even suggest as to what additional facts might or could have been set forth. Counsel say that these matters were not proper items for an account. But, we think, they are clearly in error on this. (1 C. J. 674.) And the fact that, as in this case, the items of the account were furnished under a special arrangement, would not altar that fact. (Ballou v. Casey, 60 Tex. 573; Moore v.

Powers, 16 Tex. App. 436, 41 S. W. 707; Chicago Crayon
Co. v. Choate, 102 Ark. 603, 145 S. W. 197; E. D. Metcalf
Co. v. Gilbert, 19 Wyo. 331, 116 Pac. 1017; Hilliard v.
Douglas Oil Fields, 20 Wyo. 201, 122 Pac. 626.) Under
these authorities, the plaintiff may, after fully executing
a contract, bring a straight action on an account, under
the statute, and we see no reason for holding that where,
as in this case, the plaintiff alleges a special arrangement,
and then sets out the detailed items arising thereunder,
the allegations should be held insufficient to constitute a
cause of action. In fact, we think that as to this part of
the petition, the action was in effect one on an account for
labor, material and money furnished, limited only by the
allegation that these items were to accrue in and about
the construction of the building. The so-called oral con-
tract contained no terms and fixed no prices; it was in
effect of the  same general character as when a person
agrees with a merchant for the sale to him of merchandise
from time to time. And we think there is sufficient ev-
idence in the record to sustain the allegations. It is shown
that the defendant asked plaintiff to take care of the form-
er's business during his absence; that defendant made
the statement that plaintiff was in charge of the construc-
tion of the building, and that whatever the latter did
would be satisfactory to him. Directions given at various
times by defendant to plaintiff in regard to certain items
appear in the evidence, and ratification and approval of
the actions of the plaintiff and the various items of the
account is shown nearly throughout by plaintiff's ev-
idence. Nor can the further contention of the defend-
ant that it does not appear that the extra items allowed
by the court were in fact extra and other than those aris-
ing out of the original contract, be sustained. Some of
these items show on their face that they are without the
scope of the original contract, others are clearly so shown
by the evidence and some of them were admitted to be
properly allowable by the answer of the defendant, or by

his own testimony. The value of some of these items was shown directly, the books of the plaintiff were admitted in evidence without objection, and there is testimony that they were approved by the defendant. This evidence is sufficient on the point under discussion. (1 C. J. 662.) We think that where in such case a party approves of an account, it cannot, in the absence of explanation of what was intended thereby, be taken otherwise than that the correctness thereof was admitted.

9. Defendant by way of counterclaim set up that he was entitled to the sum of $3218.90 from the plaintiff, claiming that he was compelled to purchase 180,000 of common brick, which the plaintiff had failed to burn in accordance with the original contract. Plaintiff, in reply, alleged that these bricks were bought by the defendant pursuant to a collateral agreement, made after the original contract was entered into; that by the terms of such collateral agreement defendant was to buy these 180,000 bricks, and that plaintiff was thereafter to burn an equal amount and turn these over to defendant in payment thereof; that plaintiff carried out his agreement and the defendant accepted the bricks so burned in full satisfaction. Defendant then moved that these allegations of plaintiff be stricken out on the ground that they constituted a departure from the petition. This claim of defendant was clearly wrong. Defendant, in order to establish a basis in this action for the recovery of this $3218.90 was of necessity constrained to plead his expenditure of this sum. (Larsen v. Anderson, 122 Minn. 39, 141 N. W. 847; Farmer's Trader's Nat. Bank v. Hunter, 35 Or. 188, 57 Pac. 424. See Lee Bros. & Greer v. Glenn, (S. C.) 99 S. E. 757.) Plaintiff was not compelled to leave this claim uncontested. It was not only proper, but he was, in view of the state of the pleadings, compelled to file a reply, in case he did not want to allow the amount to defendant *pro confesso*. The motion to strike made by defendant seems not to have been acted upon by the court, but four days after the filing

thereof, plaintiff filed an amended reply, and therein simply tendered a general plea of payment on this question. The filing of the motion was, doubtless, at least in part, the inducing cause of the amended reply. Counsel for defendant now contend that such pleading was not sufficient to permit, over objection, evidence of the agreement pleaded by plaintiff for payment of said sum of $3218.90 in brick burned by plaintiff. Such contention now made is, however, not at all in harmony with their motion to strike, made to the original reply, and the error in admitting the evidence, if any, was, in a measure at least, invited. We do not, however, think that it was error to admit such evidence. While there is not entire harmony on the subject in the holdings of the courts, the great weight of authority is to the effect, that, in the absence of a motion to make more specific, a general plea of payment will admit evidence of payment in money or property. (Bush v. Sproat, 43 Ark. 416; Mitchell v. Conrad, 1 Marv. 417, 41 Atl. 77; Lauden v. Birt, 4 Ind. 566; Richabaugh v. Dugan, 7 Pa. St. 394; Grosholtz v. Stifel, 4 Phila. 16; Sullivan v. Sullivan, 20 S. C. 509; Bank v. Sherman, 33 N. Y. 69; McLaughlin v. Webster, 141 N. Y. 76, 33 N. E. 1081; Wartman v. Young, (Tex. Civ. App.) 221 S. W. 660; Edmunds v. Black, 13 Wash. 490, 43 Pac. 330. 3 Abbott, Trial Ev. (3rd Ed.) 2159, 2160; Pomeroy, Remedies and Remedial Rights, sec. 701; 2 Greenleaf, Ev., sec. 526; 30 Cyc. 1260.) In Edmunds v. Black, supra, the court summed up the rule as follows:

"The respondent contends that, under such plea, evidence is admissible which shows the delivery of personal property, if it appears that at the time such property was delivered it was received as payment of the demand. The modern authorities establish the law to be as contended for by the respondent; but in all of them it is held that a general plea of payment cannot be sustained by evidence of the delivery to the claimant of anything other than

money, unless it clearly appears that it was accepted and applied by the claimant in payment of the demand."

In McLaughlin v. Webster, supra, the court said:

"But the defendants had pleaded payment generally, and under that defense were entitled to give proof of any agreement between the parties in the life time of the testator that operated to discharge the debt. It is not necessary generally to state the particular manner in which the obligation was extinguished."

So, too, in the case of Bank v. Sherman, supra, an agreement was held admissible under such general plea of payment. We think that the evidence in this case comes within the rules announced by these decisions. It is, therefore, unnecessary to determine the propriety of permitting the plaintiff to amend his petition, after the trial, in order to conform the pleadings to the proof, which was done in this case. We think, further, that the finding of the court on the issue here involved is sustained by the evidence.

10. We shall now proceed to the contention of defendant that while performance was pleaded, the evidence fails to show it. The item of $3218.90 above mentioned will again be considered in connection with this subject. The court found that the plaintiff had substantially performed the original contract. Substantial performance, on the part of the plaintiff, was all that was necessary, (9 C. S. 739), and such finding would be supported by a pleading of full performance. (Blakely v. Lumber Co., 121 Minn. 280; 141 N. W. 179; Rowe v. Gerry, 112 App. Div. 358, 98 N. Y. S. 380, 180 N. Y. 625, 81 N. E. 1175; Roberts v. Sinnott (Mont.) 177 Pac. 252; Joseph Musto, etc., v. Pacific States Corporation (Cal. App.) 192 Pac. 138; Omaha Water Co. v. Omaha, 156 Fed. 922; City of St. Charles v. Stockley, 154 Fed. 772, 85 C. C. A. 494.) The question therefore arises as to whether the finding of the court is sustained by the evidence and the record. Not a great deal of proof is found on this subject in the record. It appears, however, that the building was completed. The evidence shows that the

owner accepted the building, with certain exceptions only, and the record discloses that the case was tried under the assumption and with the understanding that the building was completed, that all the work had been done and that the litigation was confined to the items in dispute. The defendant admitted in his answer that the plaintiff performed certain work of him required and furnished a part of the labor and material. He then, further, claimed for certain omissions in cleaning down the brick, placing corner beads, using mortar and furnishing Medusa cement, for which the court subsequently allowed credit to the defendant of $508.80. Defendant further claimed credit for corner beads, lath and stucco (for which the court later allowed defendant credit for $1100.25), and for the 180,000 bricks above mentioned, but no claim is made that the work on the building requiring this material was not done, or that this material was not actually used therein. The defendant, by relying on and setting forth certain specific breaches of the contract, and upon no other, is, we think, estopped from claiming and relying upon any others. (John A. Gauger & Co. v. Lumber Co., 88 Ark. 422, 115 S. W. 157; McCullough v. Contracting Co., 82 Kans. 734, 109 Pac. 176.) Defendant in his answer further expresses willingness to allow plaintiff credit for $18,200.00, the total original contract price. This, evidently, was done, only upon the theory that the original contract was fully completed, except only as to the specific claims made to the contrary. We think, therefore, that we are justified in adopting the same theory, and we must now inquire as to whether the failure in the particulars alleged would justify a finding that the contract was not substantially complied with. Part of the above sum of $508.80, consisting of items which may fairly be called omissions to fulfill the contract, is partly, to the extent of $225.00, made up of a claim arising from a misconstruction of the contract, and is even now in dispute in this court. But the total of the above $508.80 is not sufficient, particularly in view of such dispute, to warrant us in saying that the original contract was

not substantially complied with. The foregoing item of
$1100.25 is in the nature of a credit, and stands about upon
the same footing as though defendant had advanced to
plaintiff that much more money. The items were, in sub-
stantially the amount allowed by the court, set forth as a
credit in the amended petition; the material embraced
therein was apparently willingly purchased by the defend-
ant, and we cannot, under the circumstances, say that the
purchase thereof by the defendant should be held to show
that plaintiff failed to perform his contract. And certainly,
the defendant was not prejudiced because they were not
more sufficiently pleaded in the complaint of plaintiff, and
where that is true, no reversal is required at the hands of
this court on account thereof. (Brooks v. Bellows, 192
Mich. 109, 158 N. W. 152.) There remains, then, to be con-
sidered the above item of $3218.90, paid out on account of
180,000 common bricks. The defendant insists that the
fact that he purchased these bricks shows conclusively that
plaintiff failed to perform his original contract, and that
the proof of the collateral contract concerning this item
was proof of modification of the original contract and there-
fore a waiver of performance, which cannot be shown unless
pleaded in the complaint. Authorities are cited, and the
contention, generally speaking, is no doubt correct. But
it is not valid, under the circumstances, in this case. A
case closely in point is Schillinger Bros. & Co. v. Grain
Co., 145 Iowa 750, 116 N. W. 137, 122 N. W. 961.) In that
case, as in this, plaintiff pleaded full performance, which
was denied by defendant. The latter also filed a counter-
claim, and the plaintiff thereupon pleaded a waiver. The
court said:

"The appellant contends that this question should not
be considered because no waiver is pleaded, but we think
the pleading sufficient to fairly present the question. It
will be remembered that the appellant made no specific
objection to the manner of the plaintiff's performance of
the contract in its answer proper, and that the specific com-
plaints were first made in its counter-claim. To this the

plaintiff replied, pleading a waiver as to such matters. This we think sufficient to present the question."

And there is another aspect to this point. The collateral agreement, in a sense, of course, constituted a modification of the original contract, but in another sense it was distinct and independent, not intended whatever to affect the original contract. Plaintiff was not compelled to prove performance directly. That may be shown by evidence which in effect is the equivalent thereof, or by proof of facts which have been expressly or impliedly agreed upon as tantamount thereto. (Clement v. Didier March Co., 244 Pa. 616, 90 Atl. 927.) Thus, performance by the contractor is held to be shown though the building is completed by the owner, where the latter has the right under the original contract to complete it, in case the contractor fails to do so. (Hunn v. Institute, 221 Pa. 403, 70 Atl. 812, 18 L. R. A. (N. S.) 1248.) And it has been held that, though no waiver is pleaded, performance is shown, where the evidence discloses that the work was done under the supervision of the owner as directed, and that it was so done, accepted and partly paid for. (Hanenkratt v. Braogham, 164 Mo. App. 108, 147 S. W. 1129.) So performance may be shown to have been made by an agent. (Van Fleet v. Construction Co., 142 App. Div. 517, 127 N. Y. S. 19.) *Quod facit per alium, facit per se.* Plaintiff had to see that the brick was furnished. He might do so through a friend, a neighbor, a stranger. Why not through the defendant himself? Certainly no good reason could be suggested against it. The collateral agreement, referred to, that the defendant should buy part of the brick could not have come into being unless the plaintiff was one of the parties to it. He, to the knowledge of both parties, had to furnish the brick, and the defendant, by consenting to buy a part thereof, evidently did nothing more than to do this for and on behalf of the plaintiff. In fact, the lower court, in holding that defendant was not entitled to any credit on his counterclaim for the brick bought by him, could not logically escape the further conclusion that the plaintiff performed his con-

tract insofar as performance was affected by this item, since the satisfaction of the counterclaim by the plaintiff, necessarily implies that whatever defendant did, was done for the benefit and on behalf of the plaintiff in this respect. We might say here, that there is testimony that plaintiff did subsequently burn 180,000 bricks and turned them over to defendant in accordance with the collateral agreement mentioned.

11. · The original contract between the parties provides that, in connection with the burning of the common brick, Finley was to furnish the labor only and Pew was to furnish the brick plant. Nothing is mentioned as to repairs or other incidental things in connection with the plant, or as to who was to furnish the fuel. Inasmuch, however, as Finley was to furnish the labor *only,* we think it reasonable to hold that Pew was to furnish, under the contract, a plant which was operating, a working plant, including the fuel necessary for the operation. A number of items are claimed by plaintiff for money expended for repair, fuel, and other incidental things in connection with the brick plant while burning brick, including the 180,000 substituted for those purchased by defendant. These items were disallowed by the lower court, although the testimony of the plaintiff relating thereto is undisputed, except on an item of cotton. Counsel for defendant contend that no such claims are within the issues of the case. Plaintiff, as will be recalled, asked recovery for labor, material and money furnished for the benefit of defendant "in and about" the construction of the building. The phrase quoted is somewhat indefinite, but means about the same as "in connection with." There were burnt, as we read the evidence, two kilns of brick. One of these was burnt during the construction of the school building, and the bricks therefrom were actually used therein. We think it clear, therefore, that the items of money expended in connection with the burning of this kiln, were expended "in or about" the construction of the building. Two items, however, arising in connection therewith are claimed by reason of a loss of

brick, caused, it is claimed, on account of the failure of defendant to furnish fuel at the proper time. Inasmuch as these items were not for labor, material or money furnished for the benefit of the defendant, they are clearly not within the issues of the case, and the action of the lower court in disallowing them must be sustained. The bricks from the second kiln were not used in the building. 180,000 of them were burnt to replace a like number bought by the defendant for the plaintiff. The court found that, under the collateral agreement entered into between the parties, and heretofore discussed, these bricks were to be burned under the contract, which we understand to mean that they were to be burned under the same terms as the other bricks. We think that this finding of the court is sustained by the evidence, and is in accordance with the reasonable interpretation to be put upon the agreement between, and the conduct of, the parties. Nothing in the record warrants us in holding that as to these particular bricks plaintiff was to furnish more than the labor, or that he was to burn them upon different terms than the other bricks. Hence, of course, no rental for the use of the plant in burning them should be charged against plaintiff. These bricks, as stated, were the substitute for the bricks which were actually put into the building, and were to take the place thereof. This second kiln was burned *because* of the construction of the building; except for such construction, it would not have been burnt at all. And we think that a liberal construction of the plaintiff's amended petition constrains us to hold that the items of money expended by plaintiff for fuel, repair and other incidentals for the benefit of the defendant in connection with the burning of these bricks, should be said to have been expended ''in and about,'' or in connection with, the construction of the building in view of the fact that an itemized account, setting forth the various items, was embodied in the pleading.

12. We come then to the items which should be allowed plaintiff in addition to those allowed by the lower court. There is claimed $107.50 for cotton yarn, but some of the

evidence indicates that only one-sixth was actually neces-
sary, had plaintiff used the apparatus furnished him.  Only
$17.58 can be allowed on this.  On the item of $125.50 for
sand, the evidence warrants the allowance only of 80% of
$94.00 or $75.20.  These items together with the other items
allowable in connection with the burning of the first kiln
of brick amount to $273.03. To this should be added $25.00,
allowed Pew by the lower court for bolts of cloth, volun-
tarily furnished by the latter as material for the plant, and
which according to our holding should not have been al-
lowed him.  The items allowable in connection with the
burning of the second kiln of brick, including $50.00 for
rental on grates, and including items of repair, moulds,
lumber and fuel is $749.60.  But inasmuch as plaintiff
burned in that kiln 32,000 bricks for his own use, there
should be subtracted from this 32/212th or $112.96, leaving
$636.64.  Then, since rental on the plant was not allowable
to Pew, the judgment should be increased by $180.00, part
of the rental allowed by the court below to defendant.  In
addition to this, we think that the item of $27.00 for haul-
ing gravel should be allowed to plaintiff, as that item clear-
ly does not come under the work contemplated by the orig-
inal contract.  This makes the total, by which the amount
allowed to the plaintiff should be increased, the sum of
$1141.67.

13.  On the other hand, the testimony of plaintiff him-
self conclusively shows that he failed to give the defendant
credit for a payment made to him on September 7th, 1918,
for $600.00, and another item of $169.43.  The court found
the total cash payments made to be $18,308.40, or $438.40
more than the $17,870.00 admitted by the plaintiff.  Coun-
sel for defendant contend that the result of the court was
arrived at by adding to the amount admitted the items of
$100.00, $200.00, and $138.40.  That contention seems to be
correct, and the defendant should accordingly be allowed
the additional sum of $769.43.  This leaves the net amount
by which the judgment herein should be increased at the

sum of $372.24. In other words, the judgment should be for $2472.33, instead of $2100.53.

14. Plaintiff contends that inasmuch as the contract specifically provides that he was to furnish lime, sand and mortar, without including cement, he was, therefore, not responsible for not using the latter. Whether or not the term "cement" is strictly included within the former, is not important, for plaintiff was required to do his work according to the specifications which required the use of cement, and we think that the holding of the court on this point was right.

15. We have with laborious care gone over and examined the record as to each and every item covered by the findings of facts of the court. We cannot here set out the evidence touching each of these. We must content ourselves by saying that we think that the findings of facts of the court below are correct, except only as modified herein. We have herein fully discussed the principal points raised in the briefs of counsel; those not discussed specifically, we deem either fully disposed of by the principles of law here stated, or not well taken. The judgment herein is, accordingly, modified by increasing the amount thereof from $2100.53 to the sum of $2472.33, and as so modified, the judgment is affirmed. An increase over that allowed in the court below having been herein allowed to each party upon his separate appeal, our order will provide for an equitable division of the costs.

POTTER, C. J., concurs.

KIMBALL, J., having presided in the trial of the case as District Judge, did not sit. Mentzer, District Judge, who sat in his stead, having subsequently resigned his office, did not participate in the decision.

ON PETITION FOR REHEARING

BLUME, Justice.

Counsel for Pew have filed herein their petition for rehearing based on the grounds, as stated in the brief, that the court erred:

1. In sustaining the finding of the trial court that plaintiff substantially performed the contract set out in his original petition.

2. In sustaining the order of the trial court allowing plaintiff to file his first and second amended petitions.

3. In sustaining the trial court in overruling certain objections made by defendant to evidence offered by plaintiff regarding the burning of the second kiln of brick.

4. In allowing plaintiff certain sums connected with the burning of the second kiln of brick.

Counsel are in error in thinking that the court passed on the question of the propriety of the filing of the second amended petition, as we held that it was unnecessary to pass on that point. In alleging the third error above mentioned, counsel refer to the admission of the evidence of the collateral agreement referred to in the original opinion under which Pew was to furnish certain bricks, to be subsequently replaced by Finley by burning a like number for Pew. With these explanations it is clear, when the original opinion herein is examined, that the points raised in the petition for rehearing have heretofore been fully and completely covered and thoroughly discussed, and while we commend counsel for their zeal in urging upon us the correctness of their views, we fear that to again discuss the points mentioned would but add to an already long opinion, and would but lead to repetition. No new authorities are cited, and nothing has been said in the briefs, or has occurred to us in the reconsideration of the points, to lead us to change our views heretofore expressed. We should, perhaps, add that counsel are wrong in assuming that the only evidence on the acceptance by Pew of

the bricks burned by Finley for him is that set out in their brief. Pew was on the witness stand and he was examined at length by the lower court; there was evidence tending to show that Pew sold part of these bricks—a fact tending to show acceptance—and other matters appear in. the record, which were well calculated to induce the lower court to make the finding it did on the point in question. The lower court observed the conduct and demeanor of the witnesses and was in a better position to judge of the facts than we are. We should, perhaps, also say something as to the fourth error assigned. Counsel say : ''if he (Pew) had to purchase brick in the outside market; he should not be compelled to stand the expense of plaintiff burning a like number to return to him, as well as being compelled to pay plaintiff the full contract price for his work.'' Pew, of course, under our decision, has to pay but a part, perhaps only a small part, of the burning of the brick, since Finley has to pay for all the labor. Under the original contract Finley was to pay only for the labor for any of the bricks burned, and to make him pay for more than that in burning the last kiln would certainly make him pay for more than was originally contemplated. It would seem juster to suppose that the parties had in mind that the bricks which Finley was to burn for Pew would be worth enough so as to repay Pew for all the outlay on his part.

The petition for rehearing must be denied.

*Rehearing Denied.*

POTTER, Ch. J., concurs. KIMBALL, J., did not sit.